PD-1140&1141-15
COURT OF CRIMINAL APPEALS
AUSTIN, TEXAS
Transmitted 9/16/2015 11:40:27 AM
Accepted 9/16/2015 1:55:12 PM
ABEL ACOSTA
CLERK

**PD-1140-15**
**PD-1141-15**
IN THE COURT OF CRIMINAL APPEALS
OF THE STATE OF TEXAS

PATRICK DALE EARVIN
*Appellant*

v.

THE STATE OF TEXAS
*Appellee*

On Petition for Discretionary Review from the Fourteenth Court of Appeals
Cause Nos. 14-14-00702-CR and 14-14-00703-CR
affirming the convictions in Cause Numbers 1357121 and 1357122
in the 177th District Court of Harris County, Texas

PETITION FOR DISCRETIONARY REVIEW

ALEXANDER BUNIN
Chief Public Defender
Harris County, Texas

FILED IN
COURT OF CRIMINAL APPEALS

September 16, 2015

ABEL ACOSTA, CLERK

DAUCIE SCHINDLER
Assistant Public Defender
Harris County, Texas
TBN 24013495
1201 Franklin, 13th Floor
Houston, Texas 77002
Phone: (713) 368-0016
Fax: (713) 368-9278
Daucie.schindler@pdo.hctx.net

**Counsel for Petitioner**

# IDENTITY OF PARTIES AND COUNSEL

Appellant:
Mr. Patrick Earvin
TDC No. 01952064
Reverend C.A. Holiday Transfer Facility
295 IH 45 North
Huntsville, Texas 77320-8443

Defense Counsel on Appeal:
Daucie Schindler
Assistant Public Defender
1201 Franklin Street, 13th Floor
Houston, Texas 77002

Defense Counsel at Trial:
Ms. Janet Kleban
2476 Bolsover, Suite 116
Houston, Texas 77005

Trial Prosecutor:
Mr. Steven Driver
Assistant District Attorney
1201 Franklin Street, 6th Floor
Houston, Texas 77002

Presiding Judge:
Honorable Ryan Patrick
177th District Court
Harris County, Texas
1201 Franklin Street, 19th Floor
Houston, Texas 77002

# TABLE OF CONTENTS

IDENTITY OF PARTIES AND COUNSEL ........................................................................ 2

TABLE OF CONTENTS ............................................................................................... 3

INDEX OF AUTHORITIES ........................................................................................... 4

STATEMENT REGARDING ORAL ARGUMENT ........................................................... 5

STATEMENT OF THE CASE ....................................................................................... 5

STATEMENT OF PROCEDURAL HISTORY ................................................................... 5

GROUND FOR REVIEW .............................................................................................. 6

**GROUND ONE: Did the Panel err in failing to address the merits of Mr. Earvin's claim that his plea of guilty was involuntary?**

REASONS FOR REVIEW .............................................................................................. 6

STATEMENT OF FACTS .............................................................................................. 6

ARGUMENT ............................................................................................................... 8

PRAYER ................................................................................................................... 12

CERTIFICATE OF COMPLIANCE ............................................................................... 13

CERTIFICATE OF SERVICE ....................................................................................... 14

# INDEX OF AUTHORITIES

## Cases

*Armstrong v. State*, 845 S.W.2d 909 (Tex. Crim. App. 1993) ..............................................8, 9

*Carlton v. State*, 91 S.W.3d 363 (Tex. App. -Texarkana 2002, no pet.) ............................10

*Cooper v. State*, 45 S.W.3d 77 (Tex. Crim. App. 2001) .............................................. 9, 10, 11

*Earvin v. State*, Nos. 14-14-000702-CR and 14-14-00703-CR, (Tex. App. -Houston

[14th Dist.] July 7, 2014, pet. pending) ..............................................................................10

*Sims v. State*, 99 S.W.3d 600 (Tex. Crim. App. 2003) ..............................................................9

## Statutes

Tex. R. App. P. 25.2(a)(2) ...................................................................................................10

Tex. R. App. P. 25.2(b)(3) ...................................................................................................11

Tex. R. App. P. 47.1...............................................................................................................8

Tex. R. App. P. 66.3(c) ..........................................................................................................6

To the Court of Criminal Appeals of Texas:

Patrick Dale Earvin, the defendant/appellant below, petitions for review of the Fourteenth Court of Appeals' judgment affirming his convictions.

## STATEMENT REGARDING ORAL ARGUMENT

Oral argument would aid in the resolution of the case.

## STATEMENT OF THE CASE

Mr. Earvin was indicted on October 31, 2012, in District Court Cause Number 1357121, with indecency with a child and, in District Court Cause Number 1357122, with sexual assault of a child under seventeen years of age. Both charges were alleged to have occurred on August 7, 2012. (1 C.R. at 14, 2 C.R. at 14).[1] Mr. Earvin filed a written motion to suppress on December 5, 2013 which, after a hearing on December 9, 2014, was "granted in part" and "denied in part" by the trial court. Mr. Earvin then pled guilty August 27, 2014, and was sentenced pursuant to an agreement to sixteen years (16) in the Institutional Division of the Texas Department of Criminal Justice on both counts to run concurrently. (1 C.R. at 125, 2 C.R. at 125).

## STATEMENT OF PROCEDURAL HISTORY

On July 7, 2015, in an unpublished opinion in Cause Nos. 14-14-00702-CR and 14-14-00703-CR, the Fourteenth Court of Appeals affirmed Mr. Earvin's convictions.

---

[1] For purposes of this Petintion for Discretionary Review, "1 C.R." refers to the Clerk's Record in District Court Number 1357121 and "2 C.R." refers to the Clerk's Record in District Court Number 1357122.

Mr. Earvin motioned the panel for rehearing and the court for En Banc reconsideration, that request was denied on August 27, 2015.

## GROUND FOR REVIEW

**Did the Panel err in failing to address the merits of Mr. Earvin's claim that his plea of guilty was involuntary?**

## REASON FOR REVIEW

The Fourteenth Court of Appeals has decided an important question of state or federal law in a way that conflicts with the applicable decisions of the Court of Criminal Appeals or the Supreme Court of the United States. Tex. R. App. P. 66.3(c).

## STATEMENT OF FACTS

Patrol Officer Eric Pak, with the Texas Department of Public Safety, was on duty on August 8, 2012, when he observed a vehicle driving eastbound on Interstate Highway 10 in the far left lane of the three lane roadway, at a constant rate of speed, but not exceeding the speed limit, and not passing other vehicles. The vehicle was first observed at the 818 mile marker in Chambers County. There is a sign indicating that the left lane is for passing only at approximately mile marker 812. The vehicle continued in the left lane without passing other vehicles for approximately 20 to 30 seconds before Officer Pak initiated a traffic stop. (1 R.R. at 5-8). The vehicle pulled to the shoulder of the highway and Officer Pak approached the passenger side. In the front passenger's seat there was a young girl. Officer Pak asked the driver to exit the

vehicle so that he could explain the basis for the stop and issue a warning. (1 R.R. at 12-14).

Officer Pak checked the license of the driver and determined that it was Mr. Patrick Earvin. When he ran the identifying information of the driver through the computer, he determined that Mr. Earvin was a convicted sex offender. Officer Pak became concerned when he realized that Mr. Earvin was a registered sex offender so he attempted to speak with the female passenger. The answers that the female passenger gave to his questions conflicted with the answers that had been provided by Mr. Earvin. Officer Pak attempted to reach the girl's mother, but he was unsuccessful. (1 R.R. at 15-16).

Trooper Pak became concerned for the girl so he requested the assistance of another trooper and soon thereafter, Trooper Joshua Shepherd arrived at the scene. Trooper Shepherd questioned Mr. Earvin in Trooper Pak's presence. Mr. Earvin was unable to answer specific questions about his relationship with the girl so Trooper Pak decided to call Agent Brandon Bess, with the Chambers County Police Department, to advise him on how to proceed. After speaking with Agent Bess, Trooper Pak placed the girl in the passenger seat of his patrol car for her safety and told Mr. Earvin to accompany him to the nearest Department of Public Safety Office. Mr. Earvin followed Trooper Pak in his own vehicle to the DPS Office and Trooper Shepherd followed Mr. Earvin. (1 R.R. at 21-24). Trooper Pak retained Mr. Earvin's driver's license while in route to the station. (1 R.R. at 46).

At the DPS Office, Agent Bess took over the investigation. He spoke with the girl first and then he interviewed Mr. Earvin. Mr. Earvin testified that he was handcuffed to a bench at the station, but Trooper Pak was unable to confirm whether or not Mr. Earvin was in handcuffs and Agent Bess testified that although he was surrounded by DPS troopers, Mr. Earvin was not in handcuffs. Mr. Earvin was ultimately placed under arrest and booked into the Chambers County Jail for the possession of two metal shanks and a club found inside his vehicle. The charges in these cases where filed against him the next day. (1 R.R. at 26-27).

At the conclusion of the hearing on Mr. Earvin's Motion to Suppress, the trial court determined the stop was valid, but that Mr. Earvin had "no valid expectation that he was free to go" when Trooper Pak took his driver's license and escorted him to the station. The trial court suppressed all evidence obtained after Mr. Earvin was instructed to follow Trooper Pak back to the station. (1 R.R. at 81).

**Did the Panel err in failing to address the merits of Mr. Earvin's claim that his plea of guilty was involuntary?**

## ARGUMENT

Tex. R. App. P. 47.1 requires the court of appeals to "hand down a written opinion… that addresses every issue raised and necessary to final disposition of the appeal." This mandate requires the court of appeals to not only set out a party's argument, but to address every issue raised. *Armstrong v. State*, 845 S.W.2d 909, 910 (Tex. Crim. App. 1993). The Panel's opinion fails to address Mr. Earvin's argument

8

that his pleas were involuntary due to ineffective assistance of counsel-as required by Rule 47.1, *Armstrong*, and its progeny.

In his brief on appeal, Mr. Earvin advanced the argument that his guilty pleas were entered involuntarily and unknowingly because trial counsel failed to advise him that the trial court had suppressed all incriminating evidence against him after having found that he was under arrest at the time he was required to follow Trooper Pak to the DPS station. Had Mr. Earvin known the implications of the trial court's ruling on his Motion to Suppress, he would not have plead guilty to the charges against him. Mr. Earvin's contention was before the court of appeals and was an issue "raised and necessary to final disposition of the appeal" pursuant to Rule 47.1. See *Sims v. State*, 99 S.W.3d 600, 604 (Tex. Crim. App. 2003)("The appellant's main argument before the Court of Appeals was that the tapes are the best evidence that he was not intoxicated. … This was an issue necessary to the decision.").

The Fourteenth Court of Appeals' opinion does not address the merits of Mr. Earvin's argument, but instead held as follows:

> In a plea-bargain case, a defendant can only appeal matters that were raised by written motion filed and ruled on before trial or after receiving the trial court's permission to appeal. Tex. R. App. P. 25.2(a)(2). In the absence of the trial court's permission, the voluntariness of a plea cannot be raised on appeal from a plea-bargained felony conviction. *Cooper v. State*, 45 S.W.3d 77, 81 (Tex. Crim. App. 2001).
>
> Earvin did not have permission to appeal the voluntariness of his plea. Pursuant to a plea agreement, Earvin pleaded guilty to two felony offenses, and the punishment assessed for each offense was not greater than that recommended by the prosecutor. Earvin executed written instruments waiving

9

his right to trial by jury and acknowledging a plea bargain in which the State would recommend a sentence of sixteen years' confinement in the Institutional Division of the Texas Department of Criminal Justice. Earvin acknowledged that 'if the punishment assessed by the Court does not exceed the punishment recommended by the prosecutor and agreed to by you and your attorney, the Court must give its permission to you before you may prosecute an appeal on any matter in this case except for those matters raised by you by written motion filed prior to trial[.]'…Nothing in the record indicates that the trial court granted appellant the right to appeal any issues that were not raised by written motion prior to his guilty pleas.

On these facts, we cannot consider appellant's complaint that his guilty pleas were involuntary. See Tex. R. App. P. 25.2(a)(2); *Cooper*, 45 S.W.3d at 81; *Carlton v. State*, 91 S.W. 3d 363, 364-65 & n. 1 (Tex. App. –Texarkana 2002, no pet.). Therefore, we overrule Earvin's first issue.

*Earvin v. State*, Nos. 14-14-000702-CR and 14-14-000703-CR, (Tex.App.-Houston [14th Dist.] July 7, 2014, no pet.h.).

In support of his Motion to Suppress, Mr. Earvin asserted that he was under arrest for purposes of Miranda when he left the scene of the stop and was required to proceed to the police station. (R.R. Vol. 1 at 78). The trial court denied his Motion to Suppress "as to the stop itself," but granted it to the extent that it was "compelling that the defendant had no reasonable expectation that he was free to go" and suppressed "anything after Trooper Pak gives the instruction to follow him back to the station." (R.R. Vol. 1 at 81). Mr. Earvin's requested in his motion that the trial court suppress "all evidence, tangible and intangible, oral or otherwise, obtained as a result of said detention and arrest, be suppressed and excluded from evidence in this case." (C.R. at 69).

Therefore, based on the issue raised by his Motion to Suppress, namely, the constitutionality of his arrest, and the trial court's subsequent ruling granting the suppression of illegally obtained evidence based on that issue, Mr. Earvin now argues on direct appeal, that his plea was involuntary because he would not have entered the guilty plea had he been properly advised by counsel that his request to suppress unlawfully obtained evidence had been granted by the trial court. The State did not claim that the panel was without jurisdiction to consider this issue, but rather relied upon the "probable cause statement supporting the charges," that was not before the court of appeals, as support for the contention that the trial court did not suppress all of the evidence against Mr. Earvin and therefore his pleas of guilty were well informed and voluntary.

Mr. Earvin acknowledges that where the defendant in a criminal action has pleaded guilty and the punishment assessed is not greater than that recommended by the prosecutor, the appellant must have permission of the trial court to appeal the case, except on those matters that have been raised by written motion prior to trial. See Tex. R. App. P. 25.2(b)(3); *Cooper*, 45 S.W.3d at 82-83. Here, Mr. Earvin pleaded guilty to two offenses and the punishment assessed for each offense was not greater than that recommended by the prosecutor. However, the trial court's certifications of the right to appeal indicate that "matters were raised by written motion filed and ruled on before trial, and not withdrawn or waived, and the defendant has the right of appeal." (C.R. at 123). It is an unusual situation presented here where the granting

11

of the requested relief created the issue, but Mr. Earvin's point of error complains of the actions following the ruling on his written pretrial Motion to Suppress. Because Mr. Earvin's complaint stems from the trial court's ruling on the pretrial motion the court of appeals had jurisdiction to address his complaint and the panel erred in failing to address the merits of the claim.

## PRAYER

For the reasons stated above, Mr. Earvin prays that this Court grant his petition and remand this cause to the Fourteenth Court of Appeals to consider his argument that his plea was not voluntary.

Respectfully submitted,

**ALEXANDER BUNIN**
Chief Public Defender
Harris County Texas

*/s/ Daucie Schindler*
**Daucie Schindler**
Assistant Public Defender
Harris County Texas
1201 Franklin, 13th Floor
Houston Texas 77002
(713) 368-0016
(713) 368-9247 fax
TBA No. 24013495
daucie.schindler@pdo.hctx.net

## CERTIFICATE OF COMPLIANCE

I certify that this document complies with Tex. R. App. Proc. 9. It was prepared on a computer using 14-point Garamond type. It contains 3,273 words.

/s/ *Daucie Schindler*
**DAUCIE SCHINDLER**
Assistant Public Defender

## CERTIFICATE OF SERVICE

I certify that I electronically served a copy of this brief to the Harris County District Attorney and a copy has also been mailed to Lisa McMinn, State Prosecuting Attorney, P.O. Box 13046, Austin, TX 78711, by first class mail on September 16, 2015.

_/s/ Daucie Schindler_
**DAUCIE SCHINDLER**

Assistant Public Defender

# APPENDIX A

Affirmed and Memorandum Opinion filed July 7, 2015.



In The

## Jfourteenth Court of Appeals

NO. 14-14-000702-CR
NO. 14-14-000703-CR

**PATRICK DALE EARVIN, Appellant**

**V.**

**THE STATE OF TEXAS, Appellee**

On Appeal from the 177th District Court
Harris County, Texas
Trial Court Cause Nos. 1357121 and 1357122

## MEMORANDUM OPINION

Appellant Patrick Earvin pleaded guilty to offenses of indecency with a child by contact and sexual assault of a child under age 17. *See* Tex. Penal Code Ann. §§ 21.11, 22.011 (West 2011). Pursuant to a plea agreement, the trial court assessed punishment for each offense at sixteen years' imprisonment. The sentences were to run concurrently. Earvin appeals his conviction in two issues. In his first issue, he contends that his plea was involuntary due to ineffective assistance of counsel. In

his second issue, he contends that the arresting officer did not have reasonable suspicion to stop him for a "left lane for passing only" violation. Because we lack authority to consider his ineffectiveness claim and the traffic stop was justified by reasonable suspicion, we affirm.

## I.    FACTUAL AND PROCEDURAL BACKGROUND

On August 8, 2012, Department of Public Safety Trooper Eric Pak was working stationary patrol in his beat on the eastbound lanes of Interstate 10 between mile markers 818 and 819. While watching eastbound traffic in his rearview mirror, Pak witnessed Earvin move from the center lane to the left lane. A white truck was slightly ahead of Earvin in the center lane; however, Earvin continued driving in the left lane at a constant speed without passing the truck. After observing Earvin for twenty to thirty seconds, Pak initiated a traffic stop for a "left lane for passing only" violation.

Once Earvin pulled over to the eastbound shoulder of I-10, Pak approached the passenger side of the vehicle. At that time, Pak saw a young female passenger, C.F., sitting in the front seat sucking her thumb and avoiding eye contact. Pak asked Earvin to exit the vehicle and informed him that he would be issued a warning. When Earvin appeared visually nervous, Pak questioned him about C.F. and their destination. Earvin told Pak he was taking C.F. to her mother in Beaumont.

Trooper Pak ran Earvin's license and discovered that Earvin was a registered sex offender residing in Crosby, Texas. He then asked Earvin about his association with C.F. Earvin replied that he was dating C.F.'s mother. Pak asked C.F. to join him in the patrol car, where they unsuccessfully tried to contact her mother. During their conversation, Pak learned that C.F.'s version of events differed from Earvin's version.

2

Concerned about Earvin's and C.F.'s conflicting stories, Pak contacted Brandon Bess, a local agent of the Texas Department of Public Safety's Criminal Investigations Division. Bess advised Pak to proceed with an investigation. Pursuant to Bess's suggestion, Pak asked Earvin to follow him to the station. Earvin complied with that request. Another officer who had arrived during Pak's investigation followed Earvin. C.F. rode to the station in Pak's patrol car. When the three-car caravan arrived at the station, C.F. was released to Bess for further questioning. Bess then interviewed C.F. She stated that Earvin had taken her to a motel in Channelview where he took sexually explicit photographs of her, used food and new clothes to barter for oral sex, and applied lotion to her legs while rubbing her vagina. C.F. had denied Earvin's request for vaginal sex. C.F. also informed Agent Bess that similar trips to the Baytown-Channelview area had occurred on two prior occasions. C.F. showed Bess the explicit photographs, which were stored on her mobile phone. Earvin had sent the photographs to C.F. by text message. Bess was able to identify Earvin in one of these photographs.

On August 9, 2012, the State indicted Earvin on three felony offenses: sexual assault of a child, indecency with a child by touching, and promotion of child pornography. The indictments alleged two prior convictions: one for possession of a controlled substance and another for indecency with child by contact.

Earvin filed a pretrial motion to suppress. On December 9, 2013, the trial court held a hearing on Earvin's motion to suppress. At the hearing, the parties presented evidence and argument on whether the traffic stop was justified, whether the investigation exceeded the scope of the stop, and whether Earvin was under arrest at the point he was asked to follow Pak to the station. The court determined that the traffic stop was justified by reasonable suspicion. The court found,

3

however, that the seizure rose to the level of an arrest when Pak asked Earvin to follow him to the station. The court then suppressed all evidence gathered after Pak's request, but denied the motion with respect to evidence obtained prior to Pak's request.

On August 27, 2014, pursuant to a plea agreement, Earvin pleaded guilty to indecency with a child by contact and sexual assault of a child under age 17. In return, the State dismissed its promotion of child pornography charge and abandoned the second enhancement paragraph in the two remaining indictments. The court assessed punishment on each charge at sixteen years' imprisonment, with the sentences to run concurrently, in accordance with the plea agreement. Earvin retained the right to appeal the trial court's ruling on his motion to suppress. Earvin did not file a motion for new trial. On the day of his plea, Earvin filed a signed notice of appeal explicitly pertaining to his motion to suppress.

## II. Discussion

### A. Ineffective Assistance of Counsel

In his first issue, Earvin claims his plea was involuntary due to ineffective assistance of counsel. We do not have authority to consider this issue.

In a plea-bargain case, a defendant can only appeal matters that were raised by written motion filed and ruled on before trial or after receiving the trial court's permission to appeal. Tex. R. App. P. 25.2(a)(2). In the absence of the trial court's permission, the voluntariness of a plea cannot be raised on appeal from a plea-bargained felony conviction. *Cooper v. State*, 45 S.W.3d 77, 81 (Tex. Crim. App. 2001).

Earvin did not have permission to appeal the voluntariness of his plea. Pursuant to a plea agreement, Earvin pleaded guilty to two felony offenses, and the

4

punishment assessed for each offense was not greater than that recommended by the prosecutor. Earvin executed written instruments waiving his right to trial by jury and acknowledging a plea bargain in which the State would recommend a sentence of sixteen years' confinement in the Institutional Division of the Texas Department of Criminal Justice. Earvin acknowledged that "if the punishment assessed by the Court does not exceed the punishment recommended by the prosecutor and agreed to by you and your attorney, the Court must give its permission to you before you may prosecute an appeal on any matter in this case except for those matters raised by you by written motion filed prior to trial[.]" At the plea hearing, the trial court stated that Earvin had permission to appeal the ruling on his pretrial motion to suppress. Appellant's notice of appeal explicitly states that it is limited to the matters raised in his motion to suppress. Nothing in the record indicates that the trial court otherwise granted appellant the right to appeal any issues that were not raised by written motion prior to his guilty pleas.

On these facts, we cannot consider appellant's complaint that his guilty pleas were involuntary. *See* Tex. R. App. P. 25.2(a)(2); *Cooper*, 45 S.W.3d at 81; *Carlton v. State*, 91 S.W.3d 363, 364–65 & n.1 (Tex. App.—Texarkana 2002, no pet.). Therefore, we overrule Earvin's first issue. We turn now to Earvin's second issue.

### B.    Motion to Suppress

In his second issue, Earvin claims that the trial court erred in denying his motion to suppress because Pak did not have reasonable suspicion to stop him for a "left lane for passing only" violation. We disagree.

5

## 1.    Standard of Review

We review a trial court's ruling on a motion to suppress under a bifurcated standard of review. *Abney v. State*, 394 S.W.3d 542, 547 (Tex. Crim. App. 2013). First, we afford almost total deference to the trial court's findings of historical facts as well as mixed questions of law and fact that turn on an evaluation of credibility and demeanor. *Id.* "[A] question 'turns' on an evaluation of credibility and demeanor 'when the testimony of one or more witnesses, if believed, is *always* enough to add up to what is needed to decide the substantive issue.'" *Id.* The trial judge is the sole judge of witness credibility and the weight given to witness testimony. *Ex parte Moore*, 395 S.W.3d 152, 158 (Tex. Crim. App. 2013). If the trial court makes express findings of fact, we view the evidence in the light most favorable to the ruling and determine whether the evidence supports the factual findings. *Valtierra v. State*, 310 S.W.3d 442, 447 (Tex. Crim. App. 2010). When, as here, the trial court does not make explicit findings of fact, we assume the trial court made implicit findings of fact supported by the record, *Ford v. State*, 158 S.W.3d 488, 493 (Tex. Crim. App. 2005), and we view the evidence in the light most favorable to the trial court's ruling. *Moore*, 395 S.W.3d at 158.

Second, we review de novo the trial court's application of the law to the facts as well as mixed questions of law and fact that do not turn on an evaluation of credibility and demeanor. *Abney*, 394 S.W.3d at 547; *Valtierra*, 310 S.W.3d at 447. We will sustain the trial court's ruling if it is reasonably supported by the record and is correct on any theory of law applicable to the case. *Id.* at 447–48.[1]

---

[1] Although Earvin asks us to follow this court's holding in *Jaganathan*, that case is distinguishable. There, this court applied a de novo review based on indisputable video evidence. *Jaganathan v. State*, 438 S.W.3d 823, 826 (Tex. App.—Houston [14th Dist.] 2014, pet. granted). Here, in contrast, the officer did not activate the dash-cam video until he initiated the stop. After less than five seconds have elapsed in the video, Earvin has pulled over to the shoulder and stopped his vehicle. The video in this case does not capture any of the events leading up to the

6

## 2. *Burden*

A defendant that moves to suppress evidence attributable to an alleged Fourth-Amendment violation bears the initial burden of rebutting the presumption of proper police conduct. *Amador v. State*, 275 S.W.3d 872, 878 (Tex. Crim. App. 2009). If the defendant shows that the seizure occurred without a warrant, then it is the State's burden to prove that the seizure was reasonable. *Ford*, 158 S.W.3d at 492. In this case, the traffic stop was a warrantless seizure. Therefore, the State must prove that Pak had reasonable suspicion that Earvin had committed, was in the process of committing, or was about to commit a traffic violation.

## 3. *Reasonable Suspicion*

A warrantless temporary detention is lawful when an officer has reasonable suspicion that an individual is violating the law. *Id.* Reasonable suspicion "exists if the officer has specific articulable facts that, when combined with rational inferences from those facts, would lead him to reasonably suspect that a particular person has engaged or is (or soon will be) engaging in criminal activity." *Abney*, 394 S.W.3d at 548. This objective standard asks only if an objective basis for the temporary detention exists; the officer's subjective intent is irrelevant. *Garcia v. State*, 43 S.W.3d 527, 530 (Tex. Crim. App. 2001). We make determinations on reasonable suspicion by considering the totality of the circumstances at the time of the detention. *Abney*, 394 S.W.3d at 548. We must determine whether the facts available to the officer at the moment of the seizure would warrant a man of reasonable caution in the belief that the action taken was appropriate. *See Terry v. Ohio*, 392 U.S. 1, 21-22, 88 S. Ct. 1868, 1880, 20 L. Ed. 2d 889 (1968). The stop must be supported by specific and articulable facts at its very inception. *State v.*

---

stop, as it did in *Jaganathan*. Therefore, we must apply the more deferential abuse-of-discretion standard set forth above rather than the de novo standard applied in *Jaganathan*.

7

*Duran*, 396 S.W.3d 563, 568–69 (Tex. Crim. App. 2013). The reasonable-suspicion standard requires courts to make determinations on probabilities, not certainties. *Woods v. State*, 956 S.W.2d 33, 38 (Tex. Crim. App. 1997); *see United States v. Castillo*, 28 F. Supp. 3d 673, 676 (S.D. Tex. 2014).

### 4. Application

An officer may initiate a traffic stop if he has a reasonable basis for suspecting that a motorist has committed a traffic violation. *Vasquez v. State*, 324 S.W.3d 912, 919 (Tex. App.—Houston [14th Dist.] 2010, pet. ref'd). The State is not required to show that a traffic offense was actually committed; it need only show that the officer reasonably believed that a violation was in progress. *Id.* To justify the seizure in this case, the State was required to show that the officer had reasonable suspicion that (1) the motorist committed the traffic violation of driving in the left lane without passing (2) when a sign prohibited such action. *See Abney*, 394 S.W.3d at 548; *see also* Tex. Transp. Code Ann §§ 541.304(1), 542.301, 544.004 (West 2011).

The record supports a finding that Pak reasonably believed Earvin committed a "left lane for passing only" violation. According to Pak's testimony, he observed Earvin driving in the left lane for twenty to thirty seconds. During that time, Earvin did not appear to be passing or preparing to pass any other vehicles. This observation supports the trial court's determination that Pak had reasonable suspicion Earvin committed or was in the process of committing a "left lane for passing only" violation.

The record also supports a finding that Pak reasonably believed the "left lane for passing only sign" was applicable to Earvin. Failure to comply with a traffic control device constitutes an offense only if the defendant had notice of the device and disobeyed it. *See Abney*, 394 S.W.3d at 548; *United States v. Garcia*, 976 F.

Supp. 2d 856, 863–64 (N.D. Tex. 2013). An officer is not required to visually observe a defendant passing a traffic control device. *See Castillo*, 28 F. Supp. 3d at 676. Although a mere hunch does not create reasonable suspicion for an investigative stop, the level of suspicion the standard requires is "considerably less than proof of wrongdoing by a preponderance of the evidence," and "obviously less" than is necessary for probable cause. *Navarette v. California*, — U.S. —, 134 S. Ct. 1683, 1687, 188 L. Ed. 2d 680 (2014).

In *Abney*, the facts did not support a finding of reasonable suspicion. 394 S.W.3d at 550. The traffic sign at issue was at least fifteen miles (and as many as twenty-seven miles) from the location of the stop. *Id.* at 545. This distance was too great on its own to support a reasonable-suspicion finding. *Id.* at 550. Additionally, the defendant was in the process of making a legal left hand turn when he was stopped. *Id.* at 545. Had he complied with the "left lane for passing only" sign, he would have committed other traffic violations, such as turning left into a crossover from the right hand lane. *Id.* at 549. The court determined that the stop was not justified by reasonable suspicion. *Id.* at 550.

In *Mouton v. State*, the facts did support a finding of reasonable suspicion. 101 S.W.3d 686, 690 (Tex. App.—Texarkana 2003, no pet.) (dictum). The stop occurred between mile markers 823 and 824 of the eastbound lanes of I-10 in Chambers County. *Id.* at 688, 690. The officer followed the defendant for a mile before stopping him. Though the officer did not witness the defendant passing any "left lane for passing only" signs, he testified that signs were posted a few miles from the traffic stop. The evidence indicated that the signs were located at mile markers 812, 820, and 827. *Id.* at 690. The court of appeals determined that these facts supported a finding of reasonable suspicion; the officer knew specific, articulable facts, such as the location of the signs, supporting the trial court's

finding that the defendant had indeed passed the signs. *Id.*

Similarly, in *Castillo*, the facts indicated that the officer had the requisite level of suspicion to stop the defendant. 28 F. Supp. 3d at 677. The officer first observed the defendant driving in the left hand lane roughly five miles past a "left lane for passing only" sign. *Id.* at 673. The officer did not see the defendant pass the sign. A dash-cam video, which was taken by the officer at a later date and subsequently reviewed by the court, suggested that the area in which the stop occurred was rural and not heavily traveled. *Id.* at 676. The court noted that the highway at issue linked two major cities with only one sizeable city in between. *Id.* at 675. The court observed that the particular stretch of highway did not pass through heavily populated areas. *Id.* at 675–76. Only two entrance ramps, several county roads, and few turnarounds interrupt the highway in the critical five-mile stretch. *Id.* at 676. Engaging in a probability analysis, the district court determined that the facts "easily surmount the threshold required for reasonable suspicion." *Id.* at 677.

Although Earvin relies on *Abney*, this case is more similar to *Castillo* and *Mouton*. Pak observed Earvin while on stationary patrol in his "beat," an area where he "ride[s] all the time." Pak's testimony concerning the roadway near the stop reflects his knowledge of the sign at mile marker 812 and the subsequent signs posted "every few miles" after the one at mile marker 812. Like the officer in *Mouton*, Pak's knowledge of the signs and the highway support his determination that the sign at mile marker 812 was applicable to Earvin. Additionally, Pak initiated the traffic stop approximately six miles past the traffic sign at mile marker 812. This short distance between the traffic sign and the stop is analogous to *Castillo's* five miles and *Mouton's* four miles and distinguishable from the fifteen-plus miles rejected by the Court of Criminal Appeals in *Abney*. Considering these

10

distances and the distance in the present case, along with Pak's understanding of the area comprising his beat, the record supports a finding that Pak reasonably believed the "left lane for passing only" sign was applicable to Earvin.

In sum, the evidence in this record supports the implied finding that Pak had reasonable suspicion to stop Earvin for driving in the left lane without passing. Accordingly, we overrule Earvin's second issue.

## III.  CONCLUSION

We do not have authority to consider whether Earvin's plea was involuntary due to ineffective assistance of trial counsel. The record supports the trial court's determination that Pak had reasonable suspicion to stop Earvin for a "left lane for passing only" violation. We affirm the trial court's judgment.


/s/        Marc W. Brown
           Justice

Panel consists of Justices Christopher, Brown, and Wise.
Do Not Publish — TEX. R. APP. P. 47.2(b).

11